THE FARMERS & MECHANICS' BANK OF GENESEE, RESPONDENT, v. JASON PARKER, IMPLEADED WITH JOHN STEVENS AND HARRY CHASE, APPELLANT.

*Bill of Exchange—Usury—Acceptance by Drawee—Customary Rate of Discount.*

The drawee for whose benefit a draft is drawn and procured to be discounted, and the proceeds of which are paid over to him, is a substantial party to such draft, and liable, independent of any question of acceptance of said draft.

APPEAL from the Superior Court of the City of Buffalo. The action was upon a bill of exchange for $3,500, drawn on the 7th of Nov., 1860, at Toledo, Ohio, by Stevens & Chase, of that place, discounted by the Marine Bank at Toledo for the drawers, and after acceptance by the Defendant, to whom it was addressed, rediscounted by the Plaintiff, a bank at Buffalo.

The defence alleged in the answer was, that before it was accepted by the Defendant, the draft had been discounted for the drawers by the Marine Bank of Toledo, at a usurious rate of interest, in violation of the laws of Ohio; that the Defendant accepted it without further consideration, and that the Plaintiffs afterwards took the paper with notice of these facts.

The cause was tried before Judge Clinton, without a jury; and the following is a statement, in substance, of the material findings:

The statute of Ohio on which the Appellant relies, is entitled: "An Act to authorize the business of banking." The Marine Bank was organized under the Act, and the Defendant claims that the loan to the drawers was in violation of the 24th section, and that the draft was, therefore, usurious and void. That section is as follows: "Every banking company deriving any of its powers and privileges from this act, may take, reserve, receive and charge, on any loan or discount made, or upon any note or bill of exchange, or other evidence of debt, at the rate of six per centum per annum on the amount of any such note, bill of ex-

change, or other evidence of debt, so discounted, and no more; provided, however, that interest may be reserved, or taken in advance, at the time of making the loan or discount, according to the usual rules of banking, or as calculated in Rowlett's tables; and the knowingly taking, reserving, or charging, on any debt or demand payable to such company, of a rate of interest greater than that allowed by this section, shall be held and adjudged a forfeiture of such debt or demand; but the purchase, discount, or sale of a bill of exchange payable at another place than the place of such purchase, discount, or sale, at *the current discount or premium*, shall not be considered a taking, reserving, or receiving interest, provided no agreement or understanding shall be made that the same shall be *paid* at any other place than that at which it is made payable" (1 Swan's R. S. of Ohio, p. 139, § 61).

The bill in question was made payable to the order of Wm. Hitchcock, the cashier of the Marine Bank, who made the usual cashier's endorsement in behalf of the bank.   On the day, or the day before the draft was made, Stevens and Chase made application for the discount of a draft, payable in the city of New York. They refused this, but proposed to discount two drafts of $3,500 each, drawn on the Defendant, at Buffalo; the officers stating as a reason, that the bank was short of currency, and they would have to charge one-half of one per cent. to procure a rediscount, and that the bank could make more if the drafts were drawn on Buffalo than it could if they were made payable in New York; that the bank wanted to make one per cent. a month, and could do about that by charging one-half of one per cent. for collecting, in addition to six per cent. interest in advance; that the bank could procure a rediscount at Buffalo, and designed to do so.   It was accordingly agreed that the two drafts should be made on Buffalo, and be discounted for the drawers by the Marine Bank. It was usual for the banks at Toledo to charge one-half of one per cent. for collecting paper payable in Buffalo, and the usual course of business was, for the banks in Buffalo to collect for the banks in Ohio paper payable in Buffalo, and remit the proceeds to the city of New York for one-half of one per cent.

The bill of exchange in question was drawn in pursuance of the agreement so made, and was discounted by the bank. The bank retained, on such discount, six per centum per annum in advance, for the time the bill had to run; also one-half of one per cent. on the amount of the bill, being the usual charge for collection, and paid to the drawers the proceeds of the draft, after these deductions. The bank immediately transmitted the bill to the Plaintiff, at Buffalo, with a request to discount it and remit the proceeds to the city of New York. The Defendant had not then accepted the bill. The Plaintiff procured the Defendant's acceptance, and thereafter discounted the bill for the Marine Bank of Toledo, retaining, by way of discount, at the rate of seven per cent. per annum, and remitted the avails by draft to the city of New York, less the current rate of exchange, to the correspondent of the Marine Bank of Toledo. The current rate of exchange between Toledo and Buffalo, during the year 1860, was one-half of one per cent. in favor of Buffalo; as between Toledo and New York, it was one per cent. in favor of New York; and as between Buffalo and New York, one-half of one per cent. in favor of New York. The Plaintiff, in making discount, acted in good faith, and without notice of any usury in the original discounting of the bill of exchange.

The Defendant resided in Buffalo, and he was the consignee and factor of Stevens and Chase, who were produce merchants in Toledo. This business relation had existed between them for a number of years. Messrs. Stevens and Chase had for several years raised funds to purchase grain by the discount of drafts, on an understanding that the funds thus raised should be used in purchasing grain, and the grain should be consigned to the Defendant for sale. A general account was kept between them, but the remittances of Stevens and Chase, and the proceeds of the property they consigned to the Defendant for sale, did not equal their drafts, so that the Defendant had been for three or four years, and still continued to be, their creditor, on account of his acceptances, to an amount exceeding $20,000. On the general understanding, however, stated above, he continued to honor

their drafts, and accepted that in question, the proceeds of which were procured and used in pursuance of such understanding.

The Judge found, as matter of fact, that by the laws of Ohio, all bills of exchange discounted in violation of the provision above cited from the banking act, are usurious and void; but that by the laws of that State, the discount in question was not usurious.

He accordingly rendered judgment in favor of the Plaintiffs for $3,791.96, which was affirmed on appeal to the General Term.

*E. C. Sprague* for Appellant.

*John Ganson* for Respondent.

PORTER, J.—The defence alleged in the answer is founded on the supposed violation of a statute of Ohio by the parties to the original discount. The Appellant is met at the outset with the serious difficulty that he produces no finding, as matter of fact, that the discount in question was in violation of the laws of Ohio. The Judge, on the contrary, finds that it was not in contravention of those laws; and, as the cause was tried without a jury, we are bound, in support of the judgment, to make every rational intendment consistent with the facts specifically found (Carman *v.* Pultz, 21 New York, 547; Grant *v.* Morse, 22 id. 323).

There is nothing to warrant us in assuming, against the finding of the Judge, that the reservation in Ohio, by one of the banks, of the usual percentage for collection on bills payable elsewhere, was an unauthorized or illegal exaction. The amount retained as interest, eo nomine, was just what the bank was entitled to claim. It appears that, on cash transactions, the rate of exchange was then in favor of Buffalo; but, on time loans payable in Buffalo, we are bound to assume, in accordance with the tenor of the findings, that there was a current discount at Toledo of one-half of one per cent., being the customary cost of collection. The section of the statute on which the Defendant relies, provides, in substance, that the discount of a bill of exchange payable elsewhere at the " current discount," shall not be considered as a taking or reservation of interest within the meaning of the act,

20

unless there be an understanding that the bill is not to be paid at the place so named. In this case, it is not claimed that there was any such understanding; and there is nothing in the findings to justify us in holding that the customary charge of the Toledo banks for collection was a mere cover for usurious extortion.

If the discount was at a rate allowed by law, it was not rendered usurious by any legitimate use which might afterwards be made of the paper, or by the acknowledged purpose of the bank at the time to apply it to such future use. That was a matter in which the borrowers had no concern. The lender was entitled to retain the security in his own hands, or to make any lawful disposition of it which would tend to his interest or advantage. If the bank, by submitting to a rediscount at the rate of seven per cent., could supply itself at once with current funds in New York at an expense equivalent to the mere cost of collecting the draft at maturity, the rediscount secured a legitimate benefit to the lender, without prejudice or loss to the borrower. Indeed, in the present case, the course adopted seems to have been attended with advantage to both; for the drawers, in the first instance, proposed a discount of their draft on New York which would have been perfectly legal, but would have added one-half of one per cent. to the amount to be paid at maturity, by reason of the difference of exchange, aside from the current charge for collection. In any view of the case which we are at liberty to take upon the facts found by the Judge, the transaction was not usurious under the laws of Ohio.

But even if this were otherwise, the defence, under the usury laws of that State, would be unavailing against the Plaintiffs, who were purchasers in good faith, without notice of the antecedent facts. With us the rule is different; but it is to be borne in mind that the Defendant's answer does not allege a usurious agreement in violation of the laws of New York, and no application for an amendment was made at any time in the Court below. The rights of the parties must be determined with reference to the laws of the State in which the discount was made.

The usury statute of Ohio is applicable only to banking corpo-

rations; and, unlike our own, it merely declares a forfeiture of the debt as between the lender and borrower, without annulling the contract. In respect to the bank making the illegal loan, the contract is void; not because the statute so declares it, for it contains no such declaration, but simply because the contract is ultra vires, as the Courts of that State have repeatedly held (Bank of Chillicothe *v.* Swayne, 8 Ohio, 257; Creed *v.* Commercial Bank of Cincinnati, 11 id. 489; Miami Exporting Co. *v.* Clark, 13 id. 1; Bank of Wooster *v.* Stevens, 1 Ohio State R., N. S., 233; Busby *v.* Finn, id. 409; Preble Co. Bank *v.* Russell, id. 313). In respect to purchasers of commercial paper in good faith for value, it is no defence, under the laws of Ohio, that the contract was usurious as between the original parties. It so happened that this precise point was adjudged in that State, by the ultimate appellate tribunal, in the interim between the trial of the present action and the decision rendered by Judge Clinton (Pickaway Co. Bank *v.* Prather, 12 Ohio State R., 497, 511). Even if the question were doubtful, we should hesitate to oppose our opinion of the true construction of a statute of another State, to the judgment of its own Court of last resort; but in this instance, it is proper to say, that we fully concur in the reasoning, as well as the conclusions, of the tribunal by which that judgment was pronounced.

As these views are controlling, it is needless to consider other questions very fully and ably discussed by the respective counsel, but not necessarily involved in the decision.

The judgment should be affirmed.

All the Judges concurring, except BOCKES, J., who was absent, Judgment affirmed.

All affirm.

<div align="right">

JOEL TIFFANY,
State Reporter.